# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>KY SIMERE STRATTON<br><br>*Defendant(s)* | Case No. 2:25-mj-0126 JDP |

**FILED**
Sep 9, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 4, 2025__ in the county of __Sacramento__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g) | Felon in Possession of Firearm |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/ Ryan Franzen
*Complainant's signature*

Task Force Officer Ryan Franzen, ATF
*Printed name and title*

Sworn to me and signed via telephone.

Date: September 9, 2025

*Judge's signature*

City and state: Sacramento, California    Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF SACRAMENTO POLICE DEPARMENT TASK FORCE OFFICER RYAN FRANZEN

I, Sacramento Police Department Task Force Officer Ryan Franzen, being duly sworn, hereby depose and state:

## CRIMINAL COMPLAINT

1. This Affidavit is submitted in support of an arrest warrant and criminal complaint charging **KY SIMERE STRATTON** with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), on or about July 4, 2025.

## BACKGROUND AND EXPERTISE

2. I am a Detective with the Sacramento Police Department and a Task Force Officer with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been a duly sworn Peace Officer in the State of California since September 2014. On 09/09/2014 I was sworn in as a Deputy Sheriff with the Amador County Sheriff's Office. I lateraled to the Sacramento Police Department and have been a duly sworn Police Officer with the Sacramento Police Department since March 2019. I graduated from the basic Police Academy in June of 2012. The Police Academy consisted of approximately 960 hours of training. I graduated from the California State University, Sacramento in 2015 with a Baccalaureate Degree in Criminal Justice.

3. Between September, 2012 and March, 2019 I was assigned to the Operations Division with the Amador County Sheriff's Office as a Patrol Deputy. Between August 2017 and March 2019 I was assigned to the collateral duty of SWAT Operator in conjunction with my patrol duties. From March, 2019 to July, 2020 I was assigned to the Office of Operations working Patrol with the Sacramento Police Department. In September 2019 I was temporarily assigned to the north commands Neighborhood Crimes Units (NCU). It was my primary responsibility at NCU to investigate a variety of crimes to include; residential and commercial burglaries, along with persons that receive or possess stolen property, robberies, identity theft, embezzlement, real estate fraud, and other white-collar crimes. In addition, my duties involved interviewing victims, witnesses, suspects, presenting cases to the Sacramento County District Attorney's Office for prosecution, as well as delivering courtroom testimony.

4. Between June, 2020 and January, 2021 I was temporarily assigned to the Sacramento Police Department's East Gang Enforcement Team (EGET). Our primary duties are to gather intelligence regarding gang members, investigate gang related crimes, and proactively patrol

known gang locations.  In May, 2021 I was transferred full-time to EGET and was in this assignment through August, 2022.

5.  From August, 2022 to January 2023 I was assigned to the Office of Investigations – Family Abuse/Domestic Violence Unit. It was my primary responsibility to investigate a variety of crimes to include but not limited to domestic violence and elder abuse. In addition, my duties involve interviewing victims, witnesses, suspects, presenting cases to the Sacramento County District Attorney's Office for prosecution, as well as delivering courtroom testimony.

6.  Currently, your affiant is assigned to the Office of Investigations – Special Investigations Unit (SIU).  Since January, 2023 I have been assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives as a Task Force Officer (TFO). This is a joint task force with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and allied local agencies. The goal of the task force is to reduce gun violence by bringing together federal, state, and local law enforcement. I am responsible for investigating both state and federal firearm violations. I have previously attended a 40 hour POST certified Range Master course where I became familiar with various firearms and their operation.  I have attended Glock's armorer school in 2016 and certified as a Glock armorer.  I have instructed classroom training on state and federal firearms laws pertaining to privately manufactured firearms (PMF's) and assault weapons for the California Narcotics Officer's Association (CNOA).

7.  I have conducted, as well as participated in, no less than two hundred preliminary investigations, including, but not limited to, crimes of: burglary, robbery, murder, sex assaults, armed kidnapping, larceny, arson, assaults, auto-theft, vice/prostitution, weapon violations, gang and various narcotics related offenses. While working as a patrol officer, I responded to numerous locations where I observed persons selling, using, in possession of, and under the influence of controlled substances.

8.  While acting in an undercover capacity I have conducted no less than 150 hours of surveillance of subjects who are conducting street level sales of narcotics and other illegal activities. This surveillance has led to arrests of subjects for unlawful cultivation of Cannabis, possession of controlled substances and/or narcotics, unlawful possession of firearms, and possession for sale of a controlled substance and/or narcotics.

9.  I have arrested no fewer than 70 people for firearm's related charges. I have also contacted and validated no less than 25 people as gang members. These validations have been for a variety of criminal street gangs and subsets. During these contacts I have spoken to both active and drop-out gang members regarding the activities they were and are involved in. I have also spoken to more senior officers and gang detectives regarding the activities of gang members.

10. I have conducted no less than 100 probation/parole searches of people, residences, vehicles, and personal property, resulting in numerous arrests for a variety of criminal statutes. I have spoken to victims, witnesses and suspects about how the crimes were perpetrated, as well as how the evidence was concealed and/or disposed of. I have also talked to more experienced officers who have informed me on the modus operandi of suspects in relation to these types of crimes and their personal experiences concerning the disposal of evidence of such crimes. I have learned from my training, education and experience that persons who commit robberies, burglaries, grand thefts or other thefts will often maintain certain items of evidence at their residence, on their electronic devices, or in their vehicle(s) for extended periods of time.

11. During my tenure as an ATF Task Force Officer, I have investigated violations of both federal and state laws pertaining to narcotics trafficking and firearms violations. During those investigations I have become familiar with the means in which illegal users of narcotics and persons prohibited from possessing firearms receive and or obtain firearms and narcotics. I have also become familiar with the means in which prohibited individuals obtain and distribute firearms, both through my own on-the-job experience and through speaking with other officers who have experience investigating these types of cases.

12. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

13. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

14. This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and/or law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and/or other documents or records in this affidavit, that information is also described in sum, substance, and relevant part.

## **STATEMENT OF PROBABLE CAUSE**

*Stratton driving suspiciously*

15. On the evening of July 4, 2025, Sacramento Police Department ("SPD") Officers Reese and Hurtado were on routine patrol in the South Natomas area of Sacramento. Both officers were wearing full SPD patrol uniforms and traveling in a marked SPD patrol vehicle.

16. At approximately 11:35 p.m., the officers drove to the intersection of Northfield Drive and Northview Drive in the South Natomas area of Sacramento in response to a report of individuals openly carrying firearms at a gathering of nearly 100 people at the intersection.

17. While driving northbound on Northview Drive, and approaching the intersection, the officers observed a gray Hyundai sedan driven by defendant Ky Stratton turning to go southbound on Northview Drive. The officers observed that the Hyundai had no license plate displayed on the front, in violation of California Vehicle Code § 5200.

18. Officer Hurtado turned his spotlight on to illuminate the interior of the Hyundai as the Hyundai passed by the officers' patrol car. The officers observed the driver, Stratton, reaching down to the passenger floorboard while the car abruptly swerved to the right. Stratton was the Hyundai's sole occupant.

19. Officer Reese turned the patrol car around and attempted to initiate a traffic stop on the Hyundai. Despite Officer Reese activating the patrol car's overhead red and blue emergency lights, Stratton did not stop the Hyundai. Instead, Stratton continued driving southbound at a slow rate of speed, at one point swerving so sharply to the right that he nearly collided with a parked car.

20. Eventually, Stratton stopped the Hyundai at the entrance of 2201 Northview Drive.

*Officers find Stratton in possession of firearm, and discover additional contraband in his car*

21. As Officer Hurtado approached the Hyundai, he noticed that the front passenger window was down. Officer Hurtado illuminated the interior of the car with a flashlight. He saw a cylindrical brown bottle with a white label that he immediately recognized, based on his training and experience, as promethazine. Officer Hurtado also saw a small baby bottle containing a green liquid substance, which he suspected, based on his training and experience with people consuming or dealing in promethazine, to be a mix of promethazine.

22. Officer Hurtado asked Stratton whether he had any firearms inside of the car. Stratton falsely claimed that he did not.

23. Officers Reese and Hurtado detained Stratton on the driver's side of the car, placing him in handcuffs.

24. Before the officers could begin patting down Stratton, Officer Hurtado saw the bottom of a Glock magazine sticking out of Stratton's front waistband. Officer Hurtado immediately reached to Stratton's waist band and retrieved a black Glock 26 9mm semi-automatic pistol bearing serial number BCSV738.

25. The officers conducted a search of the Hyundai and found seven 16-fluid-ounce bottles marked as containing promethazine, over 500 pills, and a large amount of cash. Between Stratton's person and his car, officers recovered $7,894 in cash.

26. The officers believed, based on their training, experience, and markings on the pills, that the pills were either mixtures of oxycodone hydrochloride and acetaminophen (385 pills), pure oxycodone hydrochloride (111 pills), or pure oxycodone (7 pills).

*Stratton admits to pills and firearm*

27. After arresting Stratton, the officers read him his *Miranda* rights. Stratton acknowledged understanding his *Miranda* rights and agreed to give a statement. Stratton admitted that he tried to hide the firearm in his car after he saw police. Stratton also admitted that he was transporting the pills found in his car.

5

*Stratton waves firearm around in YouTube video recorded on July 4, 2025*

 

28. Stratton also told police that he was filming a rap video at the dead end of Northfield Drive before encountering the officers.

29. Consistent with Stratton's admission, investigators discovered a video posted on Star Quality Entertainment's YouTube public channel on July 20, 2025. Based on my analysis of the video, the video on Star Quality Entertainment's YouTube channel appears to be have been recorded near the intersection of Northfield Drive and Northview Drive on the night of July 4, 2025.

30. In the video, Stratton, wearing the same attire as he was when arrested on the night of July 4, waves around an object that closely resembles the black Glock firearm recovered by police from Stratton's Hyundai.

*Stratton is a driver of violence in a part of the Sacramento community experiencing violent crimes*

31. The city district where Stratton possessed this firearm has experienced significant firearm-related violence in the last year. Specifically, since 2024, community members in District 1, where Stratton and affiliated gang members are active, experienced approximately 58 shootings, 155 robberies, 311 aggravated assaults, and 11 homicides.

*Stratton has a prior felony conviction and is therefore prohibited from possessing firearms.*

32. On November 4, 2021, Stratton was sentenced to 32 months in prison on a felony conviction for possession of a firearm by a felon, in violation of California Penal Code § 29800(A)(1).

*Preliminary Interstate Nexus Determination*

33. The officers determined based on the markings and serial number on the firearm seized from Stratton's waistband that the firearm was manufactured by Glock, a company based in Austria. Glock firearms are manufactured outside of the United States, in Georgia and Austria. Because Glock firearms are not manufactured in California, Stratton's firearms necessarily travelled in interstate and/or foreign commerce before Stratton possessed it.

### REQUEST TO SEAL

34. This Affidavit contains information regarding an ongoing criminal investigation and Stratton is on bail from state charges filed in connection with the arrest detailed above. In light of the on-going nature of the investigation and the likelihood that notice to Stratton would likely cause him to flee from prosecution or apprehension and jeopardize the safety of officers attempted to arrest Stratton, your Affiant requests that this Affidavit and the resulting arrest warrant be sealed on the Court's docketing system.

### CONCLUSION

35. Based on the above information, I believe there is probable cause that Stratton unlawfully possessed a firearm, in violation of 18 U.S.C. § 922(g)(1). I hereby request that this court issue an arrest warrant for Stratton.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

/s/ Ryan Frazen
Ryan Franzen
Task Force Officer, ATF

Sworn and subscribed to me telephonically, on September __9__, 2025

Hon. Jeremy D. Peterson
United States Magistrate Judge

Approved as to form:

/s/ ZULKAR KHAN
ZULKAR KHAN
Assistant United States Attorney

**United States v. Ky Simere Stratton**
**Penalties for Indictment**

### COUNT 1

VIOLATION:	18 U.S.C. § 922(g) - Felon Possession of Firearm

PENALTIES:	Not more than 15 years in prison; or
Not more than $250,000 fine; or both fine and imprisonment; and
Supervised release of up to three years.

SPECIAL ASSESSMENT: $100 (mandatory)

### FORFEITURE ALLEGATION:

VIOLATION:	18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c) - Criminal Forfeiture

PENALTIES:	As stated in the charging document